UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| FUJIFILM NORTH AMERICA CORPORATION, FUJIFILM SPECIALITY INK SYSTEMS LTD. and FUJIFILM INDIA PVT. LTD., <br>     Plaintiffs, <br><br> v. <br><br> M&R PRINTING EQUIPMENT, INC., NOVUS PRINTING EQUIPMENT, LLC and NI HOLDINGS, INC. (f/k/a NOVUS IMAGING, INC.), <br>     Defendants. | Civil Action No.: 1:20-cv-00492-LM |

## AMENDED COMPLAINT

Plaintiffs FUJIFILM North America Corporation ("FNAC"), FUJIFILM Speciality Ink Systems Ltd. ("FSIS") and FUJIFILM India Pvt. Ltd. ("FFIN") (collectively, "Fujifilm" or "Plaintiffs"), by their attorneys, Primmer Piper Eggleston & Cramer PC, complain against defendants as follows:

## PARTIES

1. Plaintiff FNAC is a New York corporation with its principal place of business located in Valhalla, New York.

2. Plaintiff FSIS is a corporation organized under the laws of Great Britain with its principal place of business located in Kent, England.

3. Plaintiff FFIN is a corporation organized under the laws of India with its principal place of business located in Haryana, India.

4. On information and belief, defendant M&R Printing Equipment, Inc. ("M&R") is a Delaware corporation with its principal place of business located in Roselle, Illinois and is the successor to defendant NI Holdings, Inc.

5. On information and belief, defendant Novus Printing Equipment, LLC ("Novus LLC") is a Delaware limited liability company with its principal place of business located at 1241 Whittier Highway, Moultonborough, New Hampshire. On information and belief, the sole member of Novus LLC is defendant M&R.

6. On information and belief, defendant NI Holdings, Inc. was formerly known as Novus Imaging, Inc. (and is referred to herein as "Novus") and is a New Hampshire corporation with its principal place of business located at 1241 Whittier Highway Moultonborough, New Hampshire.

## JURISDICTION AND VENUE

7. The Court has subject matter jurisdiction pursuant to 28 U.S.C. 1332 because the parties are completely diverse in citizenship and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

8. Venue is proper in this District because one or more defendants have offices or manufacturing facilities located in this District; a substantial part of the events giving rise to this matter occurred in this District; and defendants have consented to jurisdiction in this District.

## FACTUAL ALLEGATIONS

9. Plaintiffs distribute and sell a variety of products and equipment used in the photographic and graphic arts industries.

10. At all relevant times, Defendants manufactured and sold digital and screen printing equipment.

**The Distributor Agreement.**

11. Pursuant to a Distributor Agreement dated as of October 1, 2015 between Novus and FSIS (the "Agreement"), a copy of which is attached hereto as Exhibit A, Novus appointed

FSIS and its affiliates as worldwide distributors and resellers of Novus' "Synergia" printing unit (a/k/a Uvistar Hybrid 320 printer; the "Printer").

12. Section 3 of the Agreement authorized Fujifilm to place orders for Printers from time to time by written purchase order to Novus.

13. Pursuant to Section 7(a) and Schedule 3 of the Agreement, Novus provided to Fujifilm and its end users certain equipment and service warranties with respect to the Printers.

14. Section 7(b) of the Agreement provides, in pertinent part*:*

If the [Printers] or the tender of delivery fails in any material respect to conform to specifications of Distributor's or its designated Affiliates' purchase order, or if the [Printers] are defective or unsuitable upon delivery, or do not conform to all Manufacturer's Warranties or published specifications, [Novus] shall, at its election, either repair or replace the non-conforming [Printers]. Upon prior written approval of [Novus] (not to be unreasonably withheld, conditioned or delayed), Distributor's or its Affiliate's expenses for inspection, storing or returning any non-conforming [Printers] shall be charged to [Novus].

15. Section 8(a) of the Agreement provides, in pertinent part:

[Novus] hereby agrees to indemnify, defend, hold harmless and reimburse Distributor, its Affiliates . . . and their respective End Users from and against any and all actions, suits, claims, demands, losses, damages or other liabilities (including, without limitation, attorneys' fees and expenses) arising out of or related to: (i) [Novus'] manufacture, storage, packaging and shipment of the [Printers] including, without limitation, Defect Claims [defined in Section 5(b) as "any claim of defect, non-performance, non-conformity or other failures relating to the [Printers]" made by an end user].

16. Section 12 of the Agreement ("Right of First Refusal and Matching Right"), provides, in pertinent part, that if, during the term of the Agreement, Novus desires or intends to sell, convey or otherwise transfer all or substantially all of its assets, it shall provide written notice to Fujifilm specifying the price and other terms and conditions upon which Novus is willing to consummate such sale, conveyance or transfer, and "shall negotiate exclusively and in good faith with [Fujifilm] . . . the price and other terms and conditions of such sale for a period of thirty (30)

days" from Fujifilm's receipt of such notice.  This section further provides that only if Novus and Fujifilm are unable to reach agreement on price and other terms within such 30-day period may Novus enter into such a sale transaction with a third party.

17.     Section 13(d) of the Agreement provides, in pertinent part, that any legal action between the parties in connection with the Agreement shall be filed only in a court of competent jurisdiction where the defendant maintains its principal place of business or registered office, and that "the parties stipulate 'New Hampshire' for [Novus]."

18.     Also in 2015, FSIS and Novus entered into a "Global Service Level Agreement," (the SLA") under which Novus agreed to provide necessary support services in order to comprehensively support Novus equipment, hardware and software distributed globally by FSIS. Among other things, Novus agreed to provide "Second Level Support" for the Printers and Novus provided a warranty for defects in the Printers, including "Epidemic Defects" or "Epidemic Failure," defined as "the same event occurring in more than 10% of installations in the same circumstances in a 12 month period."

**Plaintiffs' Purchases and Defendants' Breaches Under the Agreement.**

19.     Pursuant to the Agreement, Fujifilm purchased and/or submitted purchase orders for the purchase of Printers, including without limitation the following purchases and orders.

20.     Between April 2015 and December 2015, FNAC purchased five Printers from Novus, and re-sold them to various customers in the U.S. and Canada.  Thereafter, all five Printers exhibited numerous hardware and software malfunctions, which upon information and belief, constituted Epidemic Defects or Epidemic Failure.  Although FNAC notified Novus of these defects, Novus was unable or unwilling to repair these Printers, despite promising to do so as late as July 2017, or replace them with properly functioning Printers, as required under the Agreement.

Fujifilm also incurred costs in attempting to repair these defective Printers, including without limitation costs for spare parts, shipping and for service calls. FNAC accepted the return of these defective Printers from these customers and refunded their purchase price. Thereafter, Novus failed or refused to accept the return of these defective Printers and to refund to Fujifilm the purchase price for these defective Printers.

21. Between December 2015 and March 2016, FNAC purchased from Novus: (i) one demonstrator Printer, at a purchase price of $344,060; and (ii) three additional Printers for re-sale, at an aggregate purchase price of $1,032,180; but was unable to use the demo Printer or to resell the other three Printers because they exhibited the same, un-remedied hardware and software defects as the first five Printers purchased by FNAC. Thereafter, Novus was unable or unwilling to repair these Printers despite promising to do so as late as July 2017, and Novus failed or refused to accept the return of these defective Printers and to refund to Fujifilm the purchase price for these defective Printers.

22. In or about April 2016, FNAC: (i) submitted a purchase order to Novus and paid the entire $344,060 purchase price for an additional Printer; and (ii) provided it with down payments for four additional Printers in the aggregate amount of $408,192, but Novus failed to deliver any of these Printers.

23. Between May 2017 and May 2018, FFIN purchased two Printers from Novus for a total purchase price of $738,664, which FFIN re-sold to customers in India. These Printers also experienced substantial mechanical issues, which may have constituted Epidemic Defects or Epidemic Failures. These Printers were returned by the FFIN's customers, and FFIN refunded their purchase price. Thereafter, Novus failed or refused to accept the return of these defective Printers and to refund to Fujifilm the purchase price for these defective Printers.

24. By letters dated May 17, 2017 and June 29, 2017, Fujifilm provided further notice and details to Novus regarding the numerous hardware and software malfunctions in the defective Printers noted above and demanded prompt corrective action as well as refunds for all Printers then purchased to date.

25. By letter dated July 7, 2017, Novus promised to resolve the hardware and software issues by September 2017 with the Printers purchased or ordered to date, but failed to do so by then or at any time thereafter.

26. In August 2018, FSIS and Novus discussed and reviewed a draft, new "Service Level Agreement," whereby Novus would provide technical support to Fujifilm to service the Printers, including defects in the Printers. This proposed agreement was not finalized or executed and the 2015 SLA remains in place.

27. On information and belief, Novus has closed the New Hampshire facility that had been manufacturing and supporting these Printers and no longer employs technical personnel with the requisite knowledge to correct the identified defects and to support the Printers going forward.

**M&R's and Novus LLC's Liability Under the Agreement.**

28. By letter dated December 16, 2016, Novus informed Fujifilm as follows:

In connection with the proposed transaction that Novus Imaging, inc. [sic] ("NOVUS") is contemplating with M&R Group Holdings ("M&R"), I wanted to assure you that through all the discussions we have had with M&R and their representatives that it is our understanding that the plan is for NOVUS or the surviving entity to continue to supply Fujifilm Speciality Ink Systems Limited and its affiliates with product in accordance with our Distributor Agreement dated October 1, 2015.

29. On April 18, 2017, Novus entered into an Asset Purchase Agreement with M&R and Novus LLC (the "APA"). The APA was signed by Richard Hoffman as President of M&R

and by Richard Hoffman as President of Novus LLC, as well as Michael Mills as President of Novus. Attached hereto as Exhibit B are relevant sections of the APA.

30. Under Section 2 of the APA, M&R and Novus LLC assumed all of Novus' rights existing under the "Assumed Contracts, as set forth on Schedule 2.1(a)(v)," including all claims, deposits for Printers, and prepayments for Printers.

31. The Agreement is the first contract listed in Schedule 2.1(a)(v), which M&R and Novus LLC specifically assumed under the APA.

32. Under the APA, M&R and Novus LLC acquired all rights to the corporate name "Novus Imaging, Inc." After April 18, 2017, Michael Mills sent letters to Fujifilm with the letterhead for "Novus Imaging" and signed the letters as "President, Novus Division, an M&R Company," with the address of 1241 Whittier Hwy., Moultonborough, New Hampshire, which property M&R and Novus LLC acquired as part of the APA, together with all of Novus' equipment and personal property.

33. Also on April 18, 2017, NI Holdings issued two Credit Memos to Fujifilm, which provide that deposits of $171,950 and $408,192, respectively, with the notation "Sold to M&R." These two deposits total $580,142.00. Attached as Exhibit C is a copy of the Two Credit Memos.

34. A balance sheet for NI Holdings dated March 31, 2017, before the APA was executed, shows "Deposits from Customers – $580,142.00," and a summary of assets "Purchased Assumed April 18, 2016 [sic]" and "M&R Beginning BS April 18, 2016 [sic]" shows "Deposits from Customers – $580,142.00." Upon information and belief, these funds that Novus transferred to M&R under the APA were deposits that Fujifilm provided to Novus as deposits for the purchase of Printers under the Agreement, which Printers were not delivered to Fujifilm.

35. Pursuant to the APA, M&R and Novus LLC are liable to FUJIFLM for breaches of the Agreement that occurred before April 18, 2017, because M&R and Novus LLC assumed the rights and liabilities under the Agreement.

36. Pursuant to the APA, M&R and Novus LLC are liable to Fujifilm for breaches of the Agreement that occurred after April 18, 2017, including without limitation all promises made to resolve the hardware and software issues with the Printers purchased to date under the Agreement because M&R and Novus LLC assumed the Agreement.

37. NI Holdings' Balance Sheet dated April 30, 2017 after execution of the APA, shows that NI Holdings' only assets consisted of bank deposits, accounts receivable and prepaid expenses.

38. Upon information and belief, after the APA, Novus operated as part of M&R, with Michael Mills continuing as President and continuing to work from Novus' building in New Hampshire that M&R acquired, with Novus' former employees becoming employees of M&R, and with all of Novus' physical equipment and other personal property that M&R acquired under the APA.

39. On information and belief, Novus LLC has no business or operations of its own and is a mere instrumentality of M&R that was used to effect a *de facto* merger of Novus into M&R.

40. M&R is the successor-in-interest to Novus, and is **also** liable for Novus' obligations and liabilities under the Agreement and the SLA, because there has been a *de facto* merger of Novus into M&R as evidenced by, among other things, (i) a continuity of management, personnel, assets and physical locations between Novus and M&R; (ii) M&R's holding out of Novus as a "division" of M&R; (iii) a continuity of stockholders between the companies, including Michael

D. Mills, formerly the majority stockholder of Novus and thereafter a stockholder of M&R; and (iv) Novus' cessation as an active corporation.

41. M&R is also the successor-in-interest to Novus, and is liable for Novus' obligations and liabilities under the Agreement and SLA, because M&R is a mere continuation of Novus, as evidenced by, among other things, (i) a continuity of management, personnel, assets and physical locations between Novus and M&R; (ii) M&R's holding out of Novus as a "division" of M&R; (iii) a continuity of stockholders between the companies, including Michael D. Mills, formerly the majority stockholder of Novus and thereafter a stockholder of M&R; and (iv) Novus' cessation as an active corporation.

42. M&R is also the successor-in-interest to Novus, and is liable for Novus' obligations and liabilities under the Agreement and SLA, based on the transfer of Novus' assets with an intent to hinder, delay or defraud Fujifilm. On information and belief, Novus' assets were transferred to Novus LLC and M&R for inadequate consideration, to the prejudice of Fujifilm and other creditors, and to benefit individuals with beneficial ownership in each of Novus and M&R.

43. M&R is also the successor-in-interest to Novus, and is liable for Novus' obligations and liabilities under the Agreement and SLA, because M&R expressly **assumed the obligations and liabilities under the Agreement and SLA pursuant to the APA** and impliedly assumed such obligations and liabilities **by its actions**.

## COUNT I – BREACH OF CONTRACT

44. Plaintiffs repeat and reallege each of the allegations contained in Paragraphs 1 through **43** above as if fully set forth herein.

45. The Agreement and the SLA are valid and enforceable.

46. Plaintiffs performed all of their obligations under the Agreement and the SLA.

47. Defendants have breached their obligations under the Agreement and the SLA by, among other things: (i) failing and refusing to remedy the defects in the Printers delivered to Fujifilm; (ii) breaching their promise to repair defects in the Printers; (iii) failing and refusing to accept the return of these defective Printers and to refund to Fujifilm the purchase price for the same; (iv) failing to deliver Printers ordered by Fujifilm for which it had paid defendants, in whole or in part; (v) failing to indemnify and hold Fujifilm harmless for all losses and damages arising out of Fujifilm's purchase of the Printers from Novus; (vi) failing to honor its service and warranty obligations under the SLA; and (vii) **failing to return deposits that Fujifilm made for Printers that were not delivered to Fujifilm.**

48. As a result of defendants' breaches of the Agreement and the SLA, Plaintiffs have been damaged in an amount to be proven at trial plus interest, costs and attorney's fees.

## COUNT II – CONTRACTUAL INDEMNIFICATION

49. Plaintiffs repeat and reallege each of the allegations contained in Paragraphs 1 through **48** above as if fully set forth herein.

50. Under Section **8 (a)** of the Agreement, defendants agreed to indemnify, defend and hold Fujifilm and its end users harmless from and against, *inter alia*:

> any and all actions, suits, claims, demands, losses, damages or other liabilities (including, without limitation, attorneys' fees and expenses) arising out of or related to: (i) [Novus'] manufacture, storage, packaging and shipment of the [Printers] including, without limitation, Defect Claims [defined in Section 5(b) as "any claim of defect, non-performance, non-conformity or other failures relating to the [Printers]" made by an end user].

51. As a result of defendants' numerous breaches of the Agreement and the SLA as outlined above, Plaintiffs have incurred losses, damages and expenses, including purchase costs for defective Printers, costs to accept the return of Printers from its customers and to refund their purchase price, costs incurred in attempting to repair the defective Printers, **loss of deposits for**

**Printers that were not delivered,** loss of good will and other costs and expenses, plus attorneys' fees and other costs.

52. Despite Plaintiffs' demands therefor, defendants have failed and refused to indemnify and hold Plaintiffs harmless from and against these losses, damages and expenses, thereby breaching their indemnification obligations under the Agreement.

53. As a result of defendants' breach of the Agreement's indemnification provision, Plaintiffs have been damaged in an amount to be proven at trial, plus interest, costs and attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request the following relief**:**

A. Award judgment to Plaintiffs against defendants under Counts I through **II**;

B. Award damages against defendants in an amount to be proved at trial;

C. Award pre-judgment and post-judgment interest;

D. Award all costs and expenses to which Plaintiffs are entitled, including reasonable attorneys' fees; and

E. Grant such other further relief as the Court deems just and proper.

Respectfully submitted,

FUJIFILM NORTH AMERICA CORPORATION,
FUJIFILM SPECIALITY INK SYSTEMS LTD. and
FUJIFILM INDIA PVT. LTD.,

By their attorneys,

PRIMMER PIPER EGGLESTON & CRAMER PC,

Dated: March 5, 2021   By:   /s/ *Thomas J. Pappas*
Thomas J. Pappas, Esq. (N.H. Bar No. 4111)
P.O. Box 3600
Manchester, NH 03105-3600
(603) 626-3300
tpappas@primmer.com

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing pleading has this day been forwarded via the Court's Electronic Case Filing System to:

| Jeffrey C. Spear, Esq. | William D. Woodbury, Esq. |
| jcs@orr-reno.com | wwoodbury@nco-law.com |

Dated: March 5, 2021        By:  /s/*Thomas J. Pappas*
Thomas J. Pappas, Esq., (N.H. Bar No. 4111)